The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good afternoon. We'll first call 4-23-0874, In Re Marriage of Erin M. Appellant and Christopher M. Appellee. Will counsel for the appellant please state your name for the record introducing yourself. Good afternoon. My name is Betsy Blakeman and I represent Petitioner Appellant Erin Moore. Thank you and counsel for the appellee. Good afternoon. My name is John Hawk and I represent Christopher Moore, Respondent Appellee. Thank you. Ms. Blakeman, you may proceed. Thank you, Your Honor. May it please the court. My client filed this appeal asking for the appellate court to remand some of the issues that were included in her alleged agreements regarding the judgment for dissolution of marriage and the party's parenting plan. Essentially, what this case comes down to is whether or not there was an agreement and whether or not unconscionability of that alleged agreement or duress that my client was under would entitle her to have those issues remanded and heard in full in front of the court. I know that it's our legislature's intent to promote amicable settlement and having been in practice, I can't agree with that more. What concerns me in this case is that there is no evidence or record of many of the things that our Section 502 that deals with agreements says should happen when an agreement is reached. Section A talks about that there needs to be a writing. In this case, there was no writing until after the parties had left the courthouse on April 6th of 2021. The statute says, you know, if you're there and there's no writing, then with approval of the court, you can proceed to an oral prove-up. Again, we have no record or evidence of approval of the court on that issue, and we also don't have an oral prove-up. 502 in Section B goes on to talk about that agreements, certain agreements, in this case it would be with regards to maintenance, are binding unless the court finds that the agreement is unconscionable. Again, we don't have anything in the record or any evidence that the court reviewed the agreement because we don't have an order or a recording of what happened that day. Both attorneys that were present agreed that there was no agreement read into the record, and so we can't be certain that the agreement was presented in full to the court because there is no order indicating such and there is no recording. Section C goes on to talk about if the court finds an agreement unconscionable. Again, we're left to speculate about what went on that day because there's just simply no record. With regards to unconscionability, I think what strikes... Well, counsel, let me just jump in there for a moment. You argue there's no record, but don't we have to rely upon the testimony in the bystander report? So, there was testimony during the May 10 hearing about what transpired on April 6 of 2021 when the parties went to the courthouse. It is the appellee's position that the parties negotiated and came to an agreement. It is the appellant's position that she went to court, she was told to be there. It's strikingly apparent to me in the invoices that her attorney prepared that there wasn't much preparation before that date, so I find her confusion at what was going to be happening that day to be credible. I would expect it to see billing entries for meetings, for preparation, for testimony if they were planning to go to trial on that date. So, there's not an agreement factually what happened that day, and then it's kind of an added layer of difficulty because there is no recording, no written instrument, no docket entry or court order stating that the parties had come to an agreement. So, I think it's credible that my client's position was, I didn't really know what we left, and it wasn't until I got the written agreements that I realized this is something that I wanted to sign on for, and I totally understand the court's incredulity because buyer's remorse happens, and we want to avoid people coming back and saying, you know, this wasn't the best deal. My responses to those would be section 502 says, look, we're not going to entertain arguments about buyer's remorse because we're going to put all these steps in place to make sure that those kind of arguments can be quashed by having something in writing, having a recording. I have a question following up on this. Sure. You seem to be arguing that there is a question of credibility between your client on the one hand and Ms. Schnack, who is a lawyer on the other, as to what happened and what this hearing was going to be about and what agreements, if any, had been reached. And is my understanding correct that the trial court in its written order found Ms. Schnack's testimony to be more credible than your client's regarding these events? I would say so. I don't know that it's saying that Ms. Schnack's testimony was more credible, but there was a finding made that the court must have found that there was a reason that they didn't need a writing and that an oral prove-up would be okay, but then the oral prove-up didn't happen. But I think there's certainly motivations potentially on her previous counsel to remember it a different way. Well, we weren't there for the hearing. The trial court heard Ms. Schnack and heard your client and indicated, believe Ms. Schnack, why shouldn't we accept that credibility determination? I think because the documentary evidence tends to lend itself more to my client's version of events because there's not any evidence of preparation. This case languished for four years before they proceeded to this final hearing date. I would never imagine myself arguing to this court or any other that a lawyer had underbilled. This is a large marital estate. I would have expected to see more entries for prep time if they were planning to go to trial on that date. And the lack of evidence that they had to be able to- Did you argue that to the trial judge? What's that? Did you argue that point to the trial judge as to why Ms. Schnack's testimony was suspect because of a lack of billing? I definitely presented arguments about her lack of preparation or just the evidence that would be needed to conduct a full trial. The pretrial memo that she filed noted that there were many things upon information and belief, including monetary accounts, that they couldn't state the value of because discovery had not been completed. What were the many things that were stated on information and belief? I know for sure it was IRA accounts. There was not updated financial information. The financial information that was submitted was from 2019. And we're talking about a person that makes around a million dollars a year. I think that those things would have definitely needed to be updated before they could seriously consider proceeding to a trial on the April 6th date. The only thing I saw in your brief identified as being based on information and belief was the IRA account. Is that accurate? I believe there were two issues that were on information and belief. I know one was the IRA account. I know there was an issue with updated income. And there was no investigation into the appellee's interest in the business that he works for. You indicated that there was no financial affidavit by Mr. Moore. Is that right? That's correct, Judge. Are you able to identify at this point in the appeal that there were assets that were not included in the discussion at the time of the settlement agreement? I did not focus on the property distribution because of the time that elapsed between the April 6th 2021 date and when the motion to enforce went to hearing over two years later. That was a strategic decision where my client didn't want to attack those things because that left open the door that then they would have to go back over the course of two years and track down whether certain bank accounts or certain retirement accounts had increased or decreased. And so the values that were listed on the agreements that Mr. Hawk attached to his motion to enforce are the values that were used that we submitted to the court. And Ms. Moore is not challenging those values at this time. Well, there's a pause. I'll ask a question with regard to the seems to be post hearing negotiation for a couple of matters that your client wanted addressed as a part of the final marital settlement. Did you want to address that? So, yes, I think her testimony was and her position is that the settlement agreement that the maintenance award was too low. She was expecting to get somewhere around 20, 21,000. The expenses that she listed monthly on her financial affidavit were 22,000. The police position pretrial statement was that he should pay 12,000 plus a percentage of his K-1 income. That's kind of the other layer after we get through this assessment of whether there's an agreement. The agreements that were made were not pursuant to our statute. So we had an unusual equation that we were using to set maintenance. The child support does not make sense in terms of what Ms. Moore's previous attorney had calculated. The parenting time schedule is not something that's laid out in our statute or laid out in our approved statewide forms. It's very loosely construed where they're going to split time and give deference to dad's schedule. So those were an added layer of concern is not only do we not know if there was an agreement. If we didn't know if there was an agreement and we were using statutory guidelines, I don't think this would be a great appeal. Thank you. Is there any other questions? I'll just briefly summarize my argument. In terms of the unconscionability and duress when they're talking about absence of meaningful choice, I won't go over it again, but that goes to some of the issues that were not pursued in terms of a lack of information before the parties would have proceeded. Talks about economic disparity and weakened bargaining power. I think I mentioned in my appellant brief, this is a person that was a homemaker that had three young children and that was completely financially dependent on her husband, even up through April 6 of 2021 when this alleged agreement was made. The case law talking about preparation and hastily arrived at agreements, all I think speak to the elements in this case. And that is why we filed this appeal. And I will highlight again the issue with the parenting time. Again, it's like the unusual equation for maintenance. It's not in line with what our statute envisions. It's not in line with what we provide to folks when we give them our approved statewide forms with the schedule for parenting time. And we say, you need to check these boxes. This needs to be explicit so that everyone knows what they're doing. For those reasons, I would say the primary argument is that my client was at a disadvantage and not able to make a meaningful choice about the alleged agreements. And the alleged agreements were things that are not in line with our typical statutes. And so it would be, I think, more of a burden to expect my clients to go along with those issues. And also, there was a lack, at least in the record, there's no evidence that there was any judicial oversight, especially with regards to child support and parenting time, which we need to confirm that the court has reviewed before accepting an agreement between parties. In addition to that, I will stand on my brief unless there's any further questions. There appears to be none. Counsel for the Pele? Thank you, Judge. May it please the court, counsel. Hopefully everybody can hear me all right. My system's set up here well. I see nodding, so I appreciate that. I've got headphones in, so I pardon the informality, but it helps me hear a little bit better of what the arguments were made. I sort of approached this case to four different portions in response to the appeal filed by appellants. I'll try to limit my argument to what's actually in the record. I had the benefit of being present throughout the case. So, of course, I am aware of some facts and understanding that would not be present in the record and probably not subject to this hearing today. But I made essentially four arguments in support of affirmation of the trial post ruling to enforce the settlement agreement. And one of those regarding the timeliness, I don't believe there's any reason for me to address that today. That sort of stands on its face. But the second argument that I made regarding the execution of these documents by appellants, counsel, or essentially on her behalf, it's an intriguing argument in one way. It was somewhat awkward in the way the trial court entered its order, suggesting that the parties sort of come together and then come up with another order to enter regarding the motion to enforce the settlement agreement. I had attached to that motion exactly what we were seeking to have ordered. So I believe the trial court perhaps was giving us the ability to make additions or subtractions based on negotiations for that point. But I think myself and Ms. Blakeman came to the conclusion that the only concise way to do that was to simply attach the exhibits as they were to the original motion to enforce. So that's how we got to that. I share your curiosity about the manner in which the judgment was entered in this case. And further, that the parties were ordered, or at least Ms. Moore was ordered to execute the settlement agreement after the court had already announced its ruling on the motion to enforce the settlement agreement. Why was that necessary? I had the same question, Your Honor. I think his order could have stood simply, I'm enforcing the settlement agreement as is without need for further approval by either party. I don't know the additional request for signature. I never inquired at that point. And I share the same question. Thank you. And then within that, there was no specific appeal from other provisions within the marital settlement agreement regarding possibility and sort of the standard provisions that might prevent this type of appeal, certainly under different circumstances. And I'm not sure how the court will actually treat those. I mean, there's some unique parts of this appeal, quite frankly. And that is one of them. I've never been faced with those exact set of facts. But as to whether those other provisions not directly appealed from, that would prohibit appeal, that acknowledge possibility and acknowledge the lack of duress, are those, since they weren't appealed from, are we stuck with those as factual findings or as legal findings, is a question for this court to ponder. And I would argue that they are enforceable, which would prohibit the appeal, essentially. But moving on to that, to more substantive issues within the appeal, the appellant's argument is based on unconscionability and duress. Quickly, with duress, and I don't want to be dismissive of any argument, but I don't believe the duress and coercion are valid considerations for review in this matter because there simply was no acquiescence to the agreement by this moor. There was never the force to sign or the force to agree. In fact, even within the appeal, she still denies that she ever agreed to these terms, that she told her attorney, I don't agree with this, it's not fair, I'm not signing this. So I don't think without that acquiescence, you can have arguments as to duress or coercion because she never ultimately agreed to anything. The court found the agreement. Well, you're saying that she never agreed to anything? Well, she never signed the agreement. Her counsel certainly agreed on her behalf, and she agreed in court, but she never actually signed it at that point, so with sort of what a classic coercion or duress where there was the, I don't want to say the gun to the head, but the force, oh, I didn't come back. She's certainly arguing that she never agreed to it, so I don't think she can argue duress and coercion under this circumstance. I think she agreed to it in the terms of a motion to enforce a settlement, and that largely her attorney did on her behalf as an agent with apparent authority to do so from the e-mail interchange that was part of the trial court's order, which I think gets us back to the fact that there really was a writing in this case. It's not necessarily an oral prove-up that we're talking about here. A very specific and detailed marital settlement agreement was proposed and agreed to after we were in court that day. Unfortunately, we don't have a recording, as the record indicates, of what occurred in Judge Adrian's chambers in the trial court that day, but the agreement was proffered on that day and then again through her attorney. So I guess that is a careful argument, and a great question is, I'm not arguing there was an agreement, but there was an agreement in the sense that you can argue duress and coercion. It wasn't that type of proceeding. And then I think the bigger picture and the thrust of the argument of the appellant is on unconscionability. And as the court obviously knows and is within the case law, there's two central ways an agreement can be a possible or a combination of both, procedural unconscionability and substantive. I still maintain that child support maintenance are calculated pursuant to statutory guidelines, and I think I laid that out in my brief the best that I can, and perhaps at that point it's a mathematical mistake. If it is, I can't find it. And I believe in our statutory guidelines are somewhat limited in dealing with incomes of this level, so there's ability for deviation in that regard one way or another. But I have often used when we have K-1 income or something that's not standard or subject to change, that we simply apply the same percentage to that that is being awarded in child support and maintenance, so that that same percentage would carry through. And I believe it's a very fair and accurate way to do this. It's certainly not unconscionable. I think in my brief I referenced it would come out to in that one year I picked out around $16,000 a month in non-taxable income to Ms. Moore. Ms. Moore's trial counsel had had different calculations, which, of course, at the time were either incorrect, but largely because all of the income was being considered for those. The K-1 wasn't subtracted out of it as it was for mine. There may have been some cherry-picking as to what years we were using to identify income instead of averaging, so those are some of the things that were occurring. But we also, I don't think we can view the child support maintenance, or especially maintenance, not so much child support, isolated from the other portion of the property settlement, which were quite generous in that Erin received 60% of most of the property and then a home that was not subject to debt. And I think by using a percentage basis, we eliminate a lot of arguments. So I didn't know maybe exactly the dollar amount of what the balance was. You received a percentage of the account, or were going to, so it would fluctuate with that. Procedurally, the parties were still, to the best of my knowledge, filing joint returns. There weren't any motions to compel file that I can recall leading up to trial, and that there were no issues with discovery that the record would indicate, except for, as Ms. Blatman pointed out, it might look from observing it, that there simply wasn't enough work done in that regard to get formal responses, and I would argue that that's indicative of the information being shared informally. That's not really a part of the record, necessarily. So I believe procedurally, Erin's trial counsel had all the information she would need and certainly had the marital settlement agreement and time to analyze that after we drafted that. After we were in court and informed the court to reach an agreement, the settlement agreement's drafted and had all the time that she wanted to take, quite frankly, to review that in light of all the discovery she had to determine, at least at that point, if they were in agreement with those broader terms. Mr. Hawk, had your client filed a financial affidavit? Judge, I don't think he formally filed one. I believe he just provided one. I don't believe there's any way that's in the record, but I don't think he filed a formal financial affidavit. Well, if he hadn't filed a financial affidavit and a settlement agreement was reached in the absence of a financial affidavit, would that point to procedural unconscionability? I don't believe so, Your Honor, in these circumstances. In some circumstances, it might, but I believe all the information was readily available to the client that would have been on the financial affidavit as far as incomes and that there was information provided informally, but I believe that the appellant certainly had all the information she needed to be apprised of the assets of the marriage. In addition, she received a percentage of those, so it wasn't like maybe not knowing an exact amount on that date did not hurt her for the better term. I believe there's certainly enough evidence present for the trial court to have enforced the motion to enforce the settlement agreement, and I think the one last issue is the parenting time schedule, certainly not as precise as anyone wants to see one for enforcement. In this case, you have Dr. Moore, my client, whose schedule varies every month and adamantly wanted 50-50 parenting time, so as we do in often cases and somewhat unfortunate sometimes, is we make a very broad, slightly ambiguous, I don't think that can be argued that it's not, as the parties agree with deference to my client's schedule and the thought that they'd be resetting this each month. So to enforce it, it would probably take viewing whatever those conversations were in that schedule or what agreements were made on a monthly basis, and the thought was that that would be a continuation of what they were doing. So I certainly can't argue that that's not an ideal schedule, but I think it works for them and it works for his schedule so that he can do his job and provide this type of financial support. And I believe with that that there is certainly enough evidence in the trial court rule properly and it should be affirmed. Thank you, Mr. Hawk. I'm sensing no questions if there's nothing more. Counsel, Ms. Blakeman, you may present rebuttal. The only issue, may it please the court, that I would like to address in rebuttal is the procedural unconscionability. And from my perspective, again, we have a client that's a young mom that's only working in the home with a husband that's income is literally one million times her own. She testified at the May 10, 2023 hearing that she was not allowed to open mail, that she had actually taken it upon herself to go to different banking institutions to try and get the documentation that she felt she needed. She implored her counsel to complete full discovery. I'm not against informal discovery in some cases, but I don't feel like my client was prepared. I feel like her husband withheld that information from her and left her in a position where she was completely unprepared to go to trial or be able to make any agreement to resolve her case. So I would ask that the court remand the issues of maintenance, child support, and parenting time so that those can be heard and ordered by the trial court. Thank you so much. Thank you, counsel. This matter will be taken under advisement and we will stand in recess at this time.